**\*\*\*Capital Case\*\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

No. 4:21-cv-00022-DPM

LATAVIOUS JOHNSON,                                                                                    PETITIONER

v.

DEXTER PAYNE, Director,
   Arkansas Division of Correction                                                         RESPONDENT

**Petitioner's Brief Regarding Constitutional Validity of 28 U.S.C. § 2254(d)(1)**

**In Light of** *Loper Bright Enterprises v. Raimondo***, 603 U.S. 369 (2024)**

LISA PETERS
FEDERAL PUBLIC DEFENDER

By:   Anisha N. Jones, ABN 2012004
      Assistant Federal Public Defender
      Anisha_Jones@fd.org
      Lucie Butner, TN BPR# 037314
      Research and Writing Specialist
      Lucie_Butner@fd.org
      Federal Public Defender's Office
      1401 W. Capitol Ave., Ste. 490
      Little Rock, AR 72201
      (501) 324-6114

*Counsel for LaTavious Johnson*

# TABLE OF CONTENTS

I. Introduction. ...........................................................................................................1

II. Federal courts have an Article III duty to independently decide questions of federal law, without deferring to reasonable views of non-Article III bodies. .......1

III. Recasting § 2254(d)(1) as a remedy bar does not cure the Article III defect..........4

    A. Congress's vesting of habeas jurisdiction to redress unlawful custody requires independent federal review..................................................................4

    B. Congress cannot enact a remedial bar that is triggered by deference to a non-Article III body's conclusions about the governing law. .........................6

IV. The Supreme Court has not answered the constitutional question. .......................9

## I.  Introduction.

Federal habeas courts are required under 28 U.S.C. § 2254(d)(1) to defer to reasonable state-court rulings on questions of federal law. The federal court must cede to an incorrect ruling if there is "any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014). As an Article III matter, such deference is untenable after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which invalidated a similar doctrine that required federal courts to defer to executive agencies' reasonable interpretations of federal law.

## II.  Federal courts have an Article III duty to independently decide questions of federal law, without deferring to reasonable views of non-Article III bodies.

Article III vests federal courts with "the province and duty" to "say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803). This obligation "necessarily blocks Congress from 'requiring federal courts to exercise the judicial power in a manner that Article III forbids.'" *Bank Markazi v. Peterson*, 578 U.S. 212, 225 (2016); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995). While Congress can "tell the courts what classes of cases they may decide," it cannot "prescribe or superintend how they decide those cases." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). And Congress cannot "confer the Government's 'judicial Power' on entities outside Article III." *Stern v. Marshall*, 564 U.S. 462, 484 (2011).

*Loper Bright* overruled *Chevron v. Natural Resources Defense Council,* 467 U.S. 837 (1984), and eliminated deference to the "reasonable" opinions of executive agencies. Article III power was foundational to *Loper Bright*'s rationale. *See id.* at 384–89. As the Court recounted, the Framers vested federal courts with "the responsibility" to decide "'Cases' and 'Controversies'," making federal courts "the proper and peculiar province" for deciding questions of federal

1

law. *Id.* at 384 (quoting The Federalist No. 78, at 525). Since then, the Judiciary has always carried the "solemn duty" of "interpreting the laws, in the last resort." *Id.* (quotation omitted).

*Loper Bright* expressed solicitude for executive actors, whose views merit "very great respect" on "doubtful or ambiguous" questions of federal law. *See id.* at 386-87. But Article III required that "[r]espect . . . was just that." *Id.* at 370. Non-Article III bodies can "inform" a federal court on legal questions but cannot "supersede" its "judgment." *Id.* Federal courts cannot be "bound" to defer to such views for "[o]therwise, judicial judgment would not be independent at all." When a court's "own judgment" differs from the non-Article III body, it is "not at liberty to surrender, or to waive it." *Id.* As an Article III matter, "questions of law were for courts to decide, exercising independent judgment." *Id.* at 387.[1]

*Loper Bright*'s implication for state-court deference on federal law is straightforward. Article III courts must independently decide all federal questions Congress authorized them to hear. State courts' views merit respect but cannot encroach upon this independent duty. A core concern underpinning Article III "independence" was the Framers' recognition that state courts were not "exempt from the prejudices" and not "perfectly impartial tribunals," particularly because state judges "are dependent for office and for salary on the will of the legislature." *Cohens v. Virginia,* 6 Wheat. 264, 387 (1821) (Marshall, C.J.) (collecting Founding-era sources and directing *de novo* review of state-court rulings). The historical record is replete with Founding-era sources beyond those recited in Chief Justice Marshall's opinion,[2] as

---

[1] The concurrences made an even stronger Article III point. *Id.* at 414–16 (Thomas, J., concurring); *id.* at 429–35 (Gorsuch, J., concurring).
[2] *See, e.g.*, 1 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 243 (Farrand ed., 1911) (Madison's call for having federal courts independent of state courts as more trusted national question arbiters); The Federalist No. 80 (A. Hamilton) ("[T]he most discerning cannot foresee how far the prevalency of a local spirit may be found to disqualify

2

exhaustively chronicled in modern literature.³ As Judge Stras observed before *Loper Bright*, "[n]o one would seriously argue . . . that we should defer to what state judges say federal law means, even though they are 'bound' to interpret and apply it just as we are[.]" *Voigt v. Coyote Creek Mining Co.*, 980 F.3d 1191, 1205 (8th Cir. 2020) (Stras, J., dissenting) (quoting *Cohens*).

The connection between *Chevron* and state-court deference was a pillar in the doctrinal defense of *Chevron* before *Loper Bright*. The failure of lower-court challenges to § 2254(d)(1), the argument went, assured the validity of *Chevron* deference. *See, e.g.,* Barnett, *How* Chevron *Deference Fits into Article III*, 89 GEO. WASH L. REV. 1143, 1184 (2021). The validity of § 2254(d)(1) meant that "Article III courts do not have to have the ability to give their preferred reading of federal law in all instances." *Id.* at 1182. As Judge Easterbrook posited, if § 2254(d)(1) was invalid because federal courts cannot defer to "legal views of other public actors," then *Chevron* is too. *Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996). If "state-court adjudication is sufficient to limit Article III review, the objection to *Chevron*—that is, that non-Article III [decisions] limited Article III review of legal questions—loses force." Barnett, 89

---

the [state courts] for the jurisdiction of national causes."); The Federalist No. 81 (A. Hamilton) ("State judges, holding their offices during pleasure, or from year to year, will be too little independent to be relied upon for an inflexible execution of the national laws."); The Federalist No. 22 (A. Hamilton) (disapproving of state officials because "there will be much to fear from the bias of local views and prejudices, and from the interference of local regulations. . . . [T]here would be reason to apprehend that the provisions of the [state] laws might be preferred to those of the [national] laws; for nothing is more natural to men in office than to look with peculiar deference towards that authority to which they owe their official existence.").

³       *See* Amar, *The Two-Tiered Structure of the Judiciary Act of 1789,* 138 U. PENN. L. REV. 1499, 1559–63 (1990); Clinton, *A Mandatory View of Federal Court Jurisdiction: A Guided Quest for the Original Understanding of Article III,* 132 U. PENN. L. REV. 741, 812–14 & nn. 223–233 (1984) (examining ratification debate statements about importance of federal courts to federal supremacy); Liebman & Ryan*, "Some Effectual Power": The Quantity and Quality of Decisionmaking Required of Article III Courts,* 98 COLUM. L. REV. 696, 704–762 (1998) (examining the history of the Convention).

3

GEO. L. REV. at 1183. *Chevron* and § 2254(d)(1) thus "stand or fall together." *Id.* at 1184.

In *Loper Bright* itself, the Government invoked § 2254(d)(1) to dismiss any Article III problem of limiting review to whether the "understanding of federal law [from a non-Article III body] is reasonable." Br. of Resp., *Loper Bright*, 2023 WL 6144758, at *39. It did so because embracing independent review would have "radical consequences" for § 2254(d)(1) and other doctrines. *Id.* at *38. Adopting the "theory that Article III categorically requires de novo review of legal questions would cast doubt on . . . § 2254(d)(1)". Br. of Env. Def. Fund, et al., *Relentless, Inc. v. Dep't of Commerce*, No. 22-1219, 2023 WL 9018867, *6 (U.S. Dec. 22, 2023). But the Supreme Court's Article III reasoning in *Loper Bright*, *see* 603 U.S. at 485–87, did just that.

### III. Recasting § 2254(d)(1) as a remedy bar does not cure the Article III defect.

The principal justification for § 2254(d)(1) deference has been to characterize it as a remedial inquiry—like the question of exhaustion and limitations periods—whose resolution is separate from the merits. *See, e.g.*, *Cobb v. Thaler*, 682 F.3d 364, 374–75 (5th Cir. 2012) (collecting cases). Now, *Loper Bright*'s Article III reasoning renders the defense unpersuasive. Because Congress gave federal courts jurisdiction to redress unlawful state-court custody, *see* §§ 2241, 2254(a), Congress cannot tell federal courts to reach decisions based on whether a non-Article III body reasonably decided the federal question before the court.

#### A. Congress's vesting of habeas jurisdiction to redress unlawful custody requires independent federal review.

The analysis of § 2254(d)(1)'s validity, at its foundation, is informed by the understanding that habeas review of state-court custody is duly authorized by Congress. The Fourteenth Amendment provided individual-rights-based guarantees against state custody, and Congress authorized their judicial enforcement through the Habeas Corpus Act, which

4

authorized relief from custody that violates "the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385. *See* Yackle, *Explaining Habeas Corpus*, 60 N.Y.U. L. REV. 991, 1027 (1985). The text of the 1867 Act obliged that "if it shall appear that the petitioner is [in custody] in contravention of the constitution or laws of the United States, he or she *shall forthwith be discharged* and set at liberty." *Id.* (emphasis added).[4]

The jurisdictional sweep of the 1867 Act was firmly recognized: "It brings within the habeas corpus jurisdiction . . . every possible case of privation of liberty contrary to the National Constitution, treaties, or laws. It is impossible to widen this jurisdiction." *Ex Parte McCardle*, 73 U.S. 318, 326 (1867). Later recodifications, through present day, have retained the same core jurisdictional language. *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 320-21 (1979). Despite historical inconsistency over some aspects of habeas law, *see Wainwright v. Sykes*, 433 U.S. 72, 78–86 (1977) (i.e., cognizability of error correction and the exhaustion requirement), the understanding remained that a petitioner is "entitled to have the federal habeas court make its own independent determination of his federal claim," *id.* at 87. *See also Miller v. Fenton*, 474 U.S. 104, 110–12 (1985) (describing an "independent obligation" on questions of law).

The added layer of review grew more controversial in the latter half of the 20th century,

---

[4] Congress later amended the "forthwith discharge" clause to direct courts to dispose of the party "as law and justice requires." *See* Act of June 20, 1874, ch. 333, 18 Stat. 113 (now codified at § 2243). The amended clause provided "discretion as to time and mode" of relief, to accommodate petitioners awaiting a state trial and having unexhausted remedies. *Ex parte Royall*, 117 U.S. 246, 250–54 (1884). But the clause was easily understood to require release from unlawful custody. *In re Neagle*, 135. U.S. 1, 41 (1890) (holding that the law-and-justice clause "of course, means that if he is held in custody in violation of the constitution or a law of the United States . . . he must be discharged"); *In re Medley*, 134 U.S. 160, 174 (1890) (law-and-justice clause required release, even though the violation concerned an unconstitutional sentence and guilt was undisturbed). *See* Kovarsky, *The New Negative Habeas Equity*, 137 HARV. L. REV. 2222, 2238–41 (2024) (examining the revised law-and-justice clause).

5

given the expansion of substantive rights and their ensuing re-litigation, and the inevitable passions animating criminal justice discourse. *See* Yackle, 60 N.Y.U. L. REV. at 992. In that context, three Justices suggested the Court consider a "deferential review for reasonableness" of state-court *legal* conclusions, though without examining Article III implications. *Wright v. West*, 505 U.S. 277, 292–95 (1991) (op. of Thomas, J.). In any event, the idea never won out. *See id.* at 305 (op. of O'Connor, J.); *id.* at 306 (op. of Kennedy, J.). Thus, until § 2254(d)(1), federal habeas jurisdiction meant that "relief must be granted" when a court concludes in its "independent judgment" that custody violates federal law. *See Williams v. Taylor*, 529 U.S. 362, 402 (2000) (op. of O'Connor, J.) & *id.* at 384–88 (op. of Stevens, J.).

*Loper Bright* confirms that legal deference could not be permissible under pre-AEDPA statute. Because Congress vested the Judiciary with power to redress illegal custody, §§ 2254(a), 2241, federal courts cannot defer to a non-Article III body. The text of the habeas statute, like the text of the APA, prescribed the "judicial practice dating back to *Marbury*," *i.e.*, where the court answers legal questions independently. *See Loper Bright*, 603 U.S. at 391–92; *Sykes*, 433 U.S. at 86–87. Or to use the *Marbury* verbiage, "federal courts, even on habeas, have an independent obligation to say what the law is." *Wright*, 505 U.S. at 305 (op. of O'Connor, J.).

### B. Congress cannot enact a remedial bar that is triggered by deference to a non-Article III body's conclusions about the governing law.

Congress transgressed Article III by enacting § 2254(d)(1), because it directs courts "to exercise the judicial power in a manner that Article III forbids," *Plaut*, 514 U.S. at 218, and effectively confers such power "on entities outside Article III," *Stern*, 564 U.S. at 484. Just as Congress will not be able to validly codify the *Chevron* rule, *see Loper Bright*, 603 U.S. at 384–87 (majority) & 416 (Thomas, J., concurring) ("the type of deference required by *Chevron* violates

6

the constitution"), Congress could not codify state-court deference through § 2254(d)(1).[5]

In any event, the five appellate courts previously upholding § 2254(d)(1) embraced that "Congress lacks power . . . to require federal judges to 'defer' to the interpretations reached by state courts." *E.g. Lindh*, 96 F.3d at 872. Each opinion instead upheld § 2254(d)(1) on the narrow theory that § 2254(d)(1) is a remedial or procedural bar for "[r]egulating relief," which is a separate issue from the merits of the case. *See id.*[6] But that rationale never accounts for the fact that § 2254(d)(1) is coterminous with the merits of the federal case. Because of that *sui generis* feature, recasting § 2254(d)(1) as a remedy bar only begs the Article III question.

AEDPA retained the jurisdictional command of §§ 2241 and 2254(a) to "provid[e] for a habeas remedy for those held in violation of federal law." *Lindh v. Murphy*, 521 U.S. 320, 332 (1997) (citing § 2254(a)), *id.* at 339 (Rehnquist, C.J., dissenting). Yet the object restricted by § 2254(d)(1)—the "application for a writ of habeas corpus"—is literally the cause of action under §§ 2241 and 2254(a). Because § 2254(d)(1) incorporates the same federal question that is before the federal court, its criteria necessarily operate as a standard of review for the merits of the case. But if "Congress lacks power" to directly "require federal judges to 'defer' to interpretations reached by state courts," *Lindh*, 96 F.3d at 872, it cannot end-run this prohibition by grafting a remedial bar and then laundering the unconstitutional merits

---

[5] As described by Dean Ronald Cass, the *Loper Bright* majority and concurring opinions "declare deference to agency interpretations of law inconsistent with the vesting clause of Article III[.]" Cass, *The Curtain Falls on* Chevron, 25 FED. SOC. REV. 320, 326 (2024).

[6] *See also Cobb*, 682 F.3d at 374–75 (collecting cases); *Evans v. Thompson*, 518 F.3d 1, 8–9 (1st Cir. 2008) ("Congress can set procedural rules and . . . restrict the scope of remedies for those rights without offending the Constitution."); *Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007) (no Article III problem because § 2254(d)(1) "simply sets additional standards for granting relief"); *Green v. French*, 143 F.3d 865, 875 (4th Cir. 1998) (§ 2254(d)(1) does not intrude on "independent interpretive authority" because it is only a "restriction upon the scope of the habeas remedy in certain circumstances.").

deference through the "circumstances," *id.* at 872, *Green*, 143 F.3d at 875, or "standards," *Crater*, 491 F.3d at 1127, that trigger the bar's applicability. Unlike all other remedial bars, § 2254(d)(1) dictates the outcome of the case by deferring to how a non-Article III body answered *the same federal merits questions* the federal court is tasked with deciding.[7]

*Loper Bright* further undermines this remedy-bar recasting of § 2254(d)(1). Though such framing was not used to defend agency-deference under the APA, that is a fair description of how *Chevron* functioned. The APA provision in *Chevron* sounds in remedial power—to "hold unlawful and set aside agency action," under enumerated circumstances. *Loper Bright*, 603 U.S. at 392 (quoting 5 U.S.C. § 706(2)(A)); *see Am. Council on Educ. v. F.C.C.,* 451 F.3d 226, 234 (D.C. Cir. 2006) ("We cannot set aside the Commission's reasonable interpretation of the Act in favor of [a better] one."). Had *Chevron* defenders recast the doctrine as a remedy bar against setting aside of agency rules, it would not change its fate. The problem is the *operation* of deference, not its label. Invalid "deference cannot be salvaged by recasting it [as another doctrine] no matter the gloss put on it." *Loper Bright*, 603 U.S. at 415 (Thomas, J., concurring).

An instructive analog to § 2254(d)(1) would be a rule requiring legal deference to unconsented magistrate reports. *Contra* 28 U.S.C. § 636(b)(1) (requiring *de novo* review). Such deference would violate Article III. *See Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 676–77 (2015). The problem would not be fixed if Congress simply used § 2254(d)(1) verbiage—*i.e.*, that a magistrate's report shall not be rejected or modified unless it unreasonably applied

---

[7] The non-merits inquiries cited include, *e.g.,* the § 2244(d) limitations period, the § 2254(b) exhaustion rule, the adequacy-and-independence test for enforcing exhaustion via procedural default, and the retroactivity rule. Outside of the habeas context, they include inquiries like the clear-and-indisputable mandamus test and the immunity against individual-capacity tort suits for money damages under 42 U.S.C. § 1983.

federal law. The same point is evident when positing deferential review of bankruptcy-court rulings on questions committed to Article III courts, *cf. Stern*, 564 U.S. 462 (invalidating 1984 Bankruptcy Act on Article III grounds); *Loper Bright*, 603 U.S. at 385 (quoting *Stern*) & *id.* at 430 (Gorsuch, J., concurring) (quoting *Stern*), or a deferential remedial bar augmenting jurisdiction for federal-court review of immigration courts' applications of federal law, *cf. Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 231 (2020); *I.N.S. v. St. Cyr,* 533 U.S. 289, 300–07 (2001).

The principle that Congress cannot camouflage an unconstitutional directive by enacting a remedial rule goes back to *U.S. v. Klein*, 80 U.S. 128 (1872). The law in *Klein* directed courts to dismiss cases and decline jurisdiction when it was shown that a claimant received a presidential pardon. *Id.* at 143–44. Though Congress can generally set conditions for jurisdiction and dismissal, doing so was unconstitutional in *Klein* because that condition functioned as an end-run to encroach Article II pardon power. *Id.* at 147–48. "Lacking authority to impair the pardon power of the Executive, Congress could not 'direc[t] [a] court to be instrumental to that end' [by requiring dismissals]." *Bank Markazi*, 578 U.S. at 228 (quoting *Klein*, 80 U.S. at 147) (second alteration added). The upshot to § 2254(d)(1) is the same: Because Congress would violate Article III by telling federal courts defer to state-court rulings on federal law, *Lindh*, 96 F.3d at 872, Congress cannot tell courts to deny habeas petitions under a remedy bar prescribing the same otherwise-unconstitutional deference.

**IV.    The Supreme Court has not answered the constitutional question.**

As acknowledged in the cited opinions on § 2254(d)(1), *see supra* 7 & n.1, neither the Supreme Court nor the Eighth Circuit has decided whether § 2254(d)(1) violates Article III—

9

before or after *Loper Bright*.[8] In fact, the only opinion from the Supreme Court to examine the issue *agreed* that state-court deference would likely violate Article III. *See Williams*, 529 U.S. 378–90 (Stevens, J., concurring in judgment in part).[9]

To be sure, the Supreme Court aggressively read *the meaning* of § 2254(d)(1). But the same was true with *Chevron*, whose meaning was "aggressive[ly] read[]" without ever examining how it "might be squared with . . . surrounding law." *Loper Bright*, 603 U.S. at 442 (Gorsuch, J., concurring). The Court should conduct that examination now and hold that § 2254(d)(1) is a deference doctrine that violates Article III regardless of whether it is recast as a remedy bar.

Dated: February 19, 2025

Respectfully submitted,

LISA PETERS
FEDERAL PUBLIC DEFENDER

By: Anisha N. Jones, ABN 2012004
Assistant Federal Public Defender
Anisha_Jones@fd.org
Lucie Butner, TN BPR# 037314
Research and Writing Specialist
Lucie_Butner@fd.org
Federal Public Defender's Office
1401 W. Capitol Ave., Ste. 490
Little Rock, AR 72201
(501) 324-6114

---

[8] *See also* Means, POSTCONVICTION REMEDIES § 29:3 (2024 ed., Aug. 2024 update) (collecting circuit cases examining this question); Hertz & Liebman, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 32.5 & nn. 9–10 (7th ed. 2024).

[9] Justice Stevens's four-justice opinion has not been refuted in any other opinion. The Article III concerns were discussed as an avoidance canon for interpreting § 2254(d)(1), alongside ordinary interpretive tools. Justice O'Connor's opinion *did not disagree with* (or address) those concerns, though it disagreed with Justice Stevens's application of the ordinary textual canons, *id.* at 401–13 (op. of O'Connor, J.), and it joined Justice Stevens's opinion to form a separate majority to grant relief under either meaning of § 2254(d)(1), *id.* at 390–98. The Court's dictum in *Brown v. Davenport*, 596 U.S. 118, 127 (2022)—referring to § 2254(d)'s omnibus clause—reflected the unbriefed assumption of the litigants in that case, and did not address the Article III issue implicated by legal deference in subdivision (d)(1).